IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CAROLYN J. WHITE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0484-WS-C |
| | ) |
| JOHN M. McHUGH, etc., | ) |
| | ) |
|     Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 18). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 18, 24-26), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1), the plaintiff is an African-American female employee of the United States Army Corps of Engineers. Although the complaint relates other incidents, the plaintiff asserts claims as to only two of them: (1) the failure to promote her into a GS-12 position filled by Jason Beard; and (2) the failure to promote her into a GS-13 position filled by Janet Frye. The first failure to promote led the plaintiff to file an EEO complaint, naming Jim Farnell as the discriminating official; while that complaint was pending, Farnell headed the three-person panel that recommended that Frye be promoted rather than the plaintiff. Counts One, Two and Three assert claims of sex discrimination, race discrimination and age discrimination, respectively, with respect to the position filled by Beard. Counts Four, Five and Six assert claims of race

discrimination, age discrimination and retaliation, respectively, with respect to the position filled by Frye.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id.* "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.*; *accord Mullins v. Crowell,* 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor,* 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick,* 2 F.3d at 1116; *accord Mullins,* 228 F.3d at 1313; *Clark,* 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ...,
the responsibility then devolves upon the non-movant to show the existence of a
genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving
party fails to make 'a sufficient showing on an essential element of her case with
respect to which she has the burden of proof,' the moving party is entitled to
summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a
party fails to properly support an assertion of fact or fails to properly address
another party's assertion of fact as required by Rule 56(c), the court may …
consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all
reasonable inferences, must be viewed in the light most favorable to the
nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243
(11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence
supporting a party's position.[1] Accordingly, the Court limits its review to the
exhibits, and to the specific portions of the exhibits, to which the parties have
expressly cited. Likewise, "[t]here is no burden upon the district court to distill
every potential argument that could be made based upon the materials before it on
summary judgment," *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599
(11th Cir. 1995), and the Court accordingly limits its review to those arguments the
parties have expressly advanced.

---

[1] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it
may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc*., 144
F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the
referenced portions of these [summary judgment] materials, but is not required to do
so."). "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and
"[l]ikewise, district court judges are not required to ferret out delectable facts buried in a
massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d
1057, 1061 (11th Cir. 2011) (internal quotes omitted).

**I. Position Filled by Beard.**

To prove disparate treatment in violation of Title VII, "a plaintiff may offer either direct evidence or circumstantial evidence." *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012). The plaintiff does not purport to have direct evidence of discrimination, and her claim is thus governed by the *McDonnell Douglas–Burdine* model developed for cases based on circumstantial evidence. The burden is first on the plaintiff to establish a prima facie case. If she succeeds, the defendant must meet his burden of producing evidence of one or more legitimate, nondiscriminatory reasons for the adverse employment action. If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are a mere pretext for illegal discrimination. *Holland*, 677 F.3d at 1055-56.

"In the failure-to-promote context, the prima facie case consists of showing these elements: (1) that the plaintiff belongs to a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was rejected despite her qualifications; and (4) that other equally or less-qualified employees outside her class were promoted." *Brown v. Alabama Department of Transportation*, 597 F.3d 1160, 1174 (11th Cir. 2010); *accord Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1089 (11th Cir. 2004).[2] The defendant's only challenge to the prima facie case is his argument that there was no new or vacant position for which the plaintiff could have applied but only a re-assignment of duties to him. (Doc. 18 at 16-17).

The Court agrees with the plaintiff that there is evidence from which a properly functioning jury could find that the position at issue was a new position, created when the regional resource management ("RM") quality assurance ("QA") team of which Beard was a member was dissolved and its members absorbed back into their respective districts. While there is evidence that Beard was already on

---

[2] The parties agree to use this formulation of the prima facie case. (Doc. 18 at 14; Doc. 24 at 2).

4

the district employment roll while serving on the RM QA team, (Doc. 18-21 at 9), and while there is evidence that Beard continued to perform at the district level "many of the functions" he had performed as part of the regional RM QA team, (Doc. 18-29 at 19), there is also evidence that he took on additional information management ("IM") functions regarding "accounting and finances and cost distributions and bill payments," which functions were left for the district to fulfill after IM became a regionally managed enterprise about the same time as the regional RM QA team was disbanded. (Doc. 18-21 at 6-7). There is, moreover, testimony from the defendant's own witnesses that the position filled by Beard "was created because of the added [IM] duties," (*id*. at 6), and that "you could say that it was … a newly created position." (Doc. 24-2 at 6-7).[3] The defendant thus cannot receive summary judgment based on the plaintiff's inability to establish a prima facie case.[4]

_____

[3] The defendant's effort to nullify this testimony fails, since the testimony he cites does not (as he asserts) define "newly created position" to "mea[n] merely" that Beard performed the identical job duties for the district that he had previously performed for the region. (Doc. 26 at 6). And while the defendant in brief characterizes the change in Beard's duties as "subtle," (Doc. 18 at 18), he identifies no evidence that supports this description; for all the record suggests, the IM functions may have constituted half or more of Beard's duties and been essential to justifying him as a GS-12 employee.

[4] The defendant appears to believe that, since Beard was classified as a GS-12 employee both before and after dissolution of the regional RM QA team, it is not possible that he moved into a different position when the team was disbanded. (Doc. 26 at 1-2). The mere fact, however, that Beard received no *promotion* does not establish that he received no new *position*. Nor, contrary to the defendant's impression, (*id*.), does the burden lie with the plaintiff to cite authority supporting this proposition; this is the defendant's motion for summary judgment, and the burden thus lies with him in the first instance to support his argument, not with the plaintiff to refute it.

Although unnecessary to the resolution of the instant motion, the Court notes that the defendant confirms that "[t]he Army reassigned Jason Beard," and he repeatedly speaks of "the reassignment of Jason Beard." (Doc. 18 at 16, 22, 27-28). According to the Army's civilian personnel policy, (Doc. 18-28 at 2), on which the defendant relies, "[r]eassignment is the movement of an employee to *another position*." (Doc. 18-33 at 4 (emphasis added)).

The defendant's articulated reason for placing Beard in the new GS-12 position, without advertising for the position or allowing the plaintiff to compete for it, runs as follows.  When the regional command council voted to disband the RM QA team, it specified that "the team will be dissolve[d] back into the Districts *with no adverse impact to the individuals involved*."  (Doc. 18-24 at 2 (emphasis added)).  Beard's position on the regional RM QC team was classified as GS-12, (Doc. 18-15); thus, to absorb Beard back into the district with no adverse impact, he had to be placed in a GS-12 position.  When Beard came back into the district, there was no vacancy in a GS-12 position.  (Doc. 18-29 at 17).  Thus, the only way to maintain Beard as a GS-12 was to fashion a position requiring the performance of his retained duties from his regional RM QC days, plus the additional, newly available IM duties.  Had the defendant not directly placed Beard in this position, he would have been rendered an "excess" employee and subject to a reduction in force ("RIF"), which (on his request) would have qualified him for "priority placement," meaning he would have automatically received the position without competing for it.  That is, Beard would have received the position without competition either way.  (Doc. 18 at 5-7, 16-18, 20-21).[5]

"The inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for [discrimination]."  *Crawford v. Carroll*, 529

---

[5] Technically, a defendant must support its articulated non-discriminatory reason "through the introduction of admissible evidence."  *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981).  The defendant "must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision."  *Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998).  Thus, "[t]he defendant cannot testify in abstract terms as to what might have motivated the decision-maker …."  *Id*.  Because the plaintiff does not argue that the defendant fails this test, the Court need not consider whether he has supported his articulated reason with adequate evidence of what actually motivated the decision-maker.

F.3d 961, 976 (11th Cir. 2008) (internal quotes omitted).  The plaintiff's burden is to "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1279 (11th Cir. 2008).  However, "a reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Springer v. Convergys Customer Management Group Inc.,* 509 F.3d 1344, 1349 (11th Cir. 2007) (emphasis in original) (internal quotes omitted).  To make this showing, the plaintiff may resort to "all the evidence," *Crawford*, 529 F.3d at 976, including "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 143 (2000).

The plaintiff first asserts there was an imminent GS-12 vacancy in Internal Review ("IR"), into which position Beard could have been placed without adverse impact.  (Doc. 24 at 6).[6]  The defendant says this vacancy was not anticipated until several months after Beard had assumed the RM and IM duties of the new position.  (Doc. 26 at 3).  The defendant, however, has not submitted the evidence on which he relies for this proposition.[7]  That omission leaves unrebutted the plaintiff's testimony that, "[a]t the time of the dissolution of the QA Team, there was … a GS-12 level position about to become vacant with the retirement of Melvin Golemon."  (Doc. 24-1 at 4).  Especially given the defendant's insistence that the development of a position for Beard unfolded only "gradually," as "part of a process," (Doc. 18 at 18-19), the impending availability of a GS-12 vacancy

---

[6] Beard had worked in IR immediately before being named to the regional RM QA team.  (Doc. 18-13).

[7] The defendant relies on his Exhibit I, but that exhibit reads merely, "EXHIBIT I – Intentionally omitted."  (Doc. 18-42).

undermines his argument that there was no other way to save Beard's employment but to create a new, cobbled-together position for him to fill.

The plaintiff also notes there was an existing GS-11 vacancy in IR when the regional RM QA team was dissolved. (Doc. 24 at 6). The defendant does not disagree, but he argues that, since Beard was a GS-12, moving him to a GS-11 position would have violated the directive not to "adverse[ly] impact" him. (Doc. 26 at 3). What the defendant ignores, however, is that this is exactly how the other member of the regional RM QA team from the district was placed. Melissa Moreno Adkinson was a GS-14 while on the team, and when it disbanded she was returned to her former position in the district as a GS-13 while retaining her GS-14 pay grade. (Doc. 24 at 8; Doc. 24-1 at 4). The defendant does not explain why Beard could not likewise have been placed in the GS-11 vacancy while retaining his GS-12 pay grade.

Based on the foregoing, the plaintiff has evidence refuting the defendant's articulated reason that it had no other options for dealing with Beard. The plaintiff next turns to the option which, under her evidence, the defendant did select – creating a new position and naming Beard to that position without advertisement or competition. Specifically, the plaintiff asserts that using this option was impermissible under governing policy. The regulations governing such matters, she says, permit the defendant to avoid an employee's RIF by non-competitive placement only by assignment to positions that are "available vacancies."[8] Creation of a new position to benefit the surplus employee, she says, is not placement in an available vacancy and thus exceeds the defendant's authority. (Doc. 24 at 6-7, 8). The defendant offers no response to this contention. (Doc. 26 at 3-4).

The plaintiff concludes that she has both discredited the defendant's articulated reason for his employment decision and shown an unexplained deviation from governing policy to the advantage of Beard and the disadvantage of

_____

[8] The defendant acknowledges this limiting regulatory language. (Doc. 18 at 20).

the plaintiff (whose interest in promotions was well known).  (Doc. 24 at 7-8).
Given the impropriety of the course chosen by the employer, and the obvious
availability of proper alternatives, the plaintiff concludes that the most likely
reason for the employer's conduct is unlawful discrimination against her.  The
defendant offers no argument why the plaintiff's evidence and the reasonable
inferences therefrom could not justify a properly functioning jury in finding that
his articulated reason for the employment decision was sex, race and/or age
discrimination, and the Court will not undertake to develop or support such an
argument on his behalf.  On the limited evidence and argument presented, the
defendant has not borne his burden of showing that there is no genuine dispute as
to any material fact and that he is entitled to judgment as a matter of law.

## II.  Position Filled by Frye.

The defendant first argues that the plaintiff's claim of age discrimination is
barred for failure to exhaust administrative remedies.  (Doc. 18 at 26-27).  "A
discriminatory act which is not made the basis for a timely charge is the legal
equivalent of a discriminatory act which occurred before the statute was passed.
... [I]t is merely an unfortunate event in history which has no present legal
consequences."  *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).

The plaintiff – with the assistance of counsel – submitted a formal
administrative complaint of discrimination.  (Doc. 18-44).  When asked the
"reason you believe you were discriminated against (check below all that apply),"
the plaintiff checked "race" and "reprisal"; she left blank the box for "age."  (*Id*. at
1).  In "explain[ing] when and how [she was] discriminated against," the plaintiff
complained that Frye was a less qualified "white employee," with no mention of
or allusion to age.  (*Id*.).  The EEO counselor's report confirms that the plaintiff
complained only of "race and reprisal."  (*Id*. at 3).

"[W]e have held that a plaintiff's judicial complaint is limited by the scope
of the EEOC investigation which can reasonably be expected to grow out of the

charge of discrimination." *Gregory v. Georgia Department of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotes omitted). The same standard applies to federal employees. *Basel v. Secretary of Defense*, 507 Fed. Appx. 873, 875 (11th Cir. 2013). "Given that Holmes's own communications with the EEOC stressed age, not race, discrimination in the District Manager promotions, we cannot say a race discrimination claim could reasonably be expected to arise from his complaints about the District Manager promotions." *Holmes v. Alabama Board of Pardons & Paroles*, 591 Fed. Appx. 737, 746 (11th Cir. 2014). Likewise here, the plaintiff's administrative communications stressed race, not age. Indeed, the matter proceeded to a written administrative decision following discovery and the submission of briefs, with the plaintiff – still represented by counsel – never expanding her claim beyond race and retaliation. (Doc. 18-46 at 2). The plaintiff on the instant motion makes no effort to sustain her age discrimination claim, and the Court concurs with her implicit recognition that it is barred for failure to exhaust administrative remedies.

The defendant identifies no challenge to the plaintiff's ability to establish a prima facie case of race discrimination and retaliation.[9] His articulated reason for selecting Frye over the plaintiff for the GS-13 position of supervisory accountant is that the three-person panel that recommended Frye concluded she had more and higher degrees, had a more relevant certification, and had a better interview. (Doc. 18 at 22-23). It appears to be uncontroverted that Frye had an accounting degree while the plaintiff had a business degree; that Frye had an MBA while the plaintiff had no advanced degree; and that Frye was a CPA while the plaintiff was a CFDM (certified defense financial manager).

---

[9] While the defendant in his conclusion summarily denies that the plaintiff can satisfy her prima facie case, (Doc. 18 at 27), his failure to brief this assertion precludes its consideration. *Cf. Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005) ("[A] passing reference to an issue in a brief [is] insufficient to properly raise that issue.").

The plaintiff objects that she had substantially more relevant experience than Frye, (Doc. 24 at 9-10), and the evidence indicates she is correct. When the position was filled in 2012, the plaintiff had been employed with the Corps approximately 24 years, Frye about ten years.[10] The plaintiff had held several more positions within the organization than had Frye, including leadership/supervisory positions. Perhaps most importantly, the plaintiff had previously served (in Huntsville), in a permanent (not acting) capacity, in the very position awarded Frye, and her performance in that role (and every other position she ever held) had been "exceptional." (Doc. 24-1 at 2, 5; Doc. 24-4; Doc. 24-5).

The defendant does not dispute the plaintiff's evidence. (Doc. 26 at 4-5). Instead, he reminds the Court that "Title VII does not allow federal courts to second-guess nondiscriminatory business judgments." *Flowers v. Troup County School District*, 803 F.3d 1327, 1338 (11th Cir. 2015). "And our inquiry at the third stage of the *McDonnell Douglas* analysis of a promotion discrimination claim is not concerned with [the plaintiff's] belief that she was more qualified or whether we could conclude that she was better qualified than [the selectee]." *Brooks v. County Commission*, 446 F.3d 1160, 1164 (11th Cir. 2006).

But the defendant misses the point of the plaintiff's argument. The plaintiff does not simply disagree with the panel's disregard of her superior experience in favor of Frye's degrees and certifications. Rather, she points out (with supporting evidence) that, when the very same position was filled three years earlier, the panel (headed by Farnell) passed over Frye (who then had her accounting degree, her CPA and her MBA) in favor of a white female who had none of those things, who had neither a college degree nor a CDFM certification, and who had no more academic hours of accounting than the plaintiff. (Doc. 24 at 16-17; Doc. 24-1 at 7). The plaintiff argues, plausibly, that if Frye's degrees and certifications really trump experience, Frye should have been selected to the position in 2009; since

---

[10] Neither candidate had more than modest work experience outside the Corps. (Docs. 24-4, -5).

the 2009 episode reveals that experience trumps Frye's degrees and certifications when the other candidate is white and has no history of complaining of discrimination, the real reason the panel selected Frye over the plaintiff was not Frye's degrees and certifications but the plaintiff's race and pending EEO complaint.  (Doc. 24 at 17).  To this reasonable argument the defendant offers only silence, and the Court once again will fashion no counter-argument on his behalf.

The plaintiff also argues, with supporting evidence, that the standard practice in filling supervisory positions is to place someone on the panel who is: (1) from outside the hiring office; and (2) an expert in the subject matter of the position being filled.  Farnell, however, when he staffed the panel, did not follow this practice.  Instead, he placed on the panel an in-house counsel and an assistant chief of operations who admittedly possessed no understanding of military financial operations (even though that was part of the position as well as a strength of the plaintiff and a weakness of Frye) and who admitted afterwards being unable to follow much of the discussion.  (Doc. 24 at 19-20; Doc. 24-1 at 8-10).  The predictable result, she says, was that the other panel members deferred to Farnell, whose retaliatory and racially discriminatory motivations (which prompted him to stack the panel) prevailed.

"[A]n employer's deviation from its own standard procedures may serve as evidence of pretext."  *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006).  "To establish pretext, a plaintiff must show that the deviation from the policy occurred in a discriminatory manner."  *Rojas v. Florida*, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002).  Because the plaintiff testified as to Farnell's deviation from standard (actual) *practice*, not simply from formal (theoretical) *policy*, she has cleared this hurdle.  The defendant again offers no response to the plaintiff's evidence and argument.

The plaintiff points to what she believes are several additional indicia that the defendant's articulated reason for the promotion decision is a pretext for retaliation and race discrimination.  Because the Court concludes that the evidence

12

discussed above suffices to create a jury issue in this regard, it is unnecessary to consider these arguments separately.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted** with respect to Count V and is in all other respects **denied**.

DONE and ORDERED this 14th day of March, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE